IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CORNER POCKET, INC., )
)
         Plaintiff, )
)
v. ) Civil Action No. 12-288
) Judge Nora Barry Fischer
TRAVELERS INSURANCE, )
)
         Defendant. )

**MEMORANDUM OPINION**

This is a breach of contract action in which Plaintiff Corner Pocket alleges that Defendant Travelers Insurance failed to properly honor Plaintiff's insurance policy ("the Policy"). (Docket No. 37 at 1-2). Pending before the Court is a Summary Judgment Motion filed by Defendant Travelers Insurance ("Travelers"). (Docket No. 33). Plaintiff responded with a brief in opposition to this Motion. (Docket No. 37). Defendant has filed a reply. (Docket No. 39). Following briefing and the Court's review of the submitted Policy, oral argument on the Motion was heard on July 19, 2013. (Docket No. 40). Subsequently, Defendant submitted proof of loss documents. (Docket No. 42). Plaintiff answered with its own supplemental documents related to proof of loss, (Docket No. 44), to which Defendant has filed a response. (Docket No. 46). Defendant's Motion for Summary Judgment is now ripe for disposition. For the following reasons, said Motion [33] is DENIED.

**I.    FACTUAL BACKGROUND**

The Policy at issue between the parties provides property damage coverage, among other coverages, to Plaintiff's building located at 2000 Eden Park Boulevard, McKeesport, Pennsylvania ("the Building"). (Docket No. 35-2, at 17; Docket No. 35-3, at 9). The present

dispute revolves around the total amount of money Travelers allegedly owes to Plaintiff under the Policy following damage the Building sustained in a snowstorm that occurred in February 2010. (Docket No. 35, at ¶¶ 4-7; Docket No 37, at 1-2).

**A. The Parties**

Defendant Travelers is one of the largest property casualty companies in the United States. It has more than 30,000 employees, 13,000 independent agents, and multiple market segments across the personal, business, financial and international insurance groups. Travelers maintains offices in the United States, United Kingdom, Canada, Lloyd's of London, and the Republic of Ireland.[1] Plaintiff Corner Pocket is a restaurant, ice cream parlor, and pool hall located in McKeesport and does business as "Ball Park Restaurant." (Docket No. 35, at ¶ 1; Docket No. 44-1, at 1). It is privately owned by Mary and David Donato. (Docket No. 35-6, at 3; Docket No 37, at 2).

**B. The Insurance Policy**

On March 6, 2009, Travelers issued to Plaintiff an insurance policy with a property damage coverage amount of $687,628 for a term of one year commencing on April 15, 2009. (Docket No. 35-3, at 2). According to the Policy, coverage applies to "Premises Location No. 0001" and "Building No. 0001." (Docket No. 35-3, at 11). "Premises Location No. 1" and "Building No. 1" are elsewhere defined as Plaintiff's Building located at 2000 Eden Park Boulevard, McKeesport, Pennsylvania 15132. (*Id.* at 9). The Policy covers "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by *or resulting from* a Covered Cause of Loss." (*Id.* at 22) (emphasis added). The Policy contains an

---

[1] *See* TRAVELERS – ABOUT US, https://www.travelers.com/about-us/index.aspx (last visited September 4, 2013).

Exclusions Clause, which stipulates that Travelers "will not pay for loss or damages caused by or resulting from… (1) Wear and tear; (2) Rust, other corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself." (Docket No. 35-4, at 8).

The Policy also requires that any legal action be "brought within 2 years after the date on which the direct physical loss or damage occurred." (Docket No. 35-3, at 20). It continues that, in the event of loss or damage, Plaintiff must "[g]ive [Travelers] prompt notice of the loss or damage [and] [i]nclude a description of the property involved." (*Id.* at 32). The Policy included additional directions and details in the event of loss or damage:

> [Corner Pocket must] [t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of [its] expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

(*Id.*). Further, "[i]f [Corner Pocket] decide[s] to repair or rebuild buildings which have sustained loss or damage, [Travelers'] payment will include any necessary and reasonable architectural, engineering, consulting or supervisory fees incurred in the repair or rebuilding. This will not increase the applicable Limits of Insurance." (Docket No. 35-3, at 37). The Policy also contains a Loss Payment clause that provides in pertinent part:

> 4. Loss Payment
>     a. In the event of loss or damage covered by this Coverage
>     Form, at our option, we will either:
> (1) Pay the value of lost or damaged property;
> (2) Pay the cost of repairing or replacing the lost or
> damaged property;
> …

3

(*Id.* at 32).

### C. The Alleged Snowstorm Damage

A snowstorm occurred in February 2010 in the area where the Building is located.[2] (Docket No. 35, at ¶¶ 5-6). Plaintiff initially claimed roof damage of approximately $45,000 resulting from the snowstorm, which Travelers paid. (*Id.* at ¶¶ 8-9). While attempting to repair the damage to the roof caused by the storm in July 2010, Plaintiff discovered that the roof decking supporting the roof was also severely damaged. (Docket No. 44, at ¶¶ 1-2). Therefore, it requested that Travelers pay approximately $30,000 to fix the roof decking,[3] (Docket No. 42-4, at 3-4), which it contends was also caused by the February 2010 snowstorm. (Docket No. 35 at ¶ 7; Docket No. 35-6, at 20-22).

On July 22, 2010, Travelers refused to issue payment for repairs to the roof decking on the basis that the damage to the decking was caused by long-term decay, rust, and deterioration, not the snowstorm. (Docket No. 35-2, at 17-18). As Travelers explained, under the explicit terms of the Policy, damage caused by rust and long-term decay is excluded from coverage. (*Id.* at 18; Docket No. 35-4, at 8). This denial of Plaintiff's claim ultimately stalled repair efforts, as

---

[2] Travelers refers to the date of loss as February 6, 2010 in its July 22, 2010 letter to Mr. Donato, while the Proof of Loss Statement prepared by Plaintiff states that the date of loss was February 10, 2010. (Docket No 44-1; Docket No 44-2); *see also* FED. R. EVID. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned".). The Court takes judicial notice of the National Weather Service's Snow Records for Pittsburgh, Pennsylvania. In February of 2010, 11.4 inches of snow fell on average every day. In *Easy Sportswear, Inc. v. American Economy Ins. Co.*, Plaintiff requested the court take judicial notice of adjudicative facts contained within the Governor's "Proclamation of Disaster Emergency." 2008 WL 2682689 (W.D. Pa. July 1, 2008). This Court held that the Governor's proclamation was not a source "whose accuracy cannot reasonably be questioned" regarding the existence of a storm or the damage caused by said storm. *Id.* at *1 (citing *Weber v. Trinity Meadows Raceway, Inc.*, 1996 WL 477049, at *5 n. 1 (N.D.Tex. June 20, 1996). This Court stated that a "much more appropriate" source would have been the National Weather Service. *Id.* at *1 n. 2.

[3] A contractor had estimated that the cost to repair the roof decking would be around $40,696. (Docket No. 35, at ¶ 8; Docket No. 35-2, at 4).

repairing the roof was impossible without first repairing the damaged roof decking. (Docket No. 35, at ¶ 7; Docket No. 39, at 10-11). Because no roofer would repair the roof without the decking first being replaced, the building continued to sustain further damage to its inside and outside fixtures from the elements. (Docket No. 39, at 10-11). Plaintiff contends that, as a direct result of Travelers' refusal to pay for the necessary repairs to the roof decking, the building is now no longer usable and has been rendered valueless. (Docket No. 35, at ¶ 5). Based on these facts, it asserts that Travelers breached the Policy and seeks damages in the amount of $461,000, which is the Building's replacement value.[4] (Docket No. 37, at 1, 3).

## II. LEGAL STANDARD

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be denied when there is a genuine issue of material fact. *Anderson v. Liberty Lobby,* 477 U.S. 242 (1986).

In evaluating the evidence, this Court must interpret facts in the light most favorable to the non-movant, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478

---

[4] Plaintiff claims that it would cost $600,000 to repair the building, while it would cost only $461,000 to replace it. (Docket No. 37, at 3). Plaintiff provided an itemized list of the damages at issue in their Proof of Loss. (Docket No. 44-3, at 1-2); *see also* (Docket No. 35-2, at 3-5).

F.3d 144, 147 (3d Cir. 2007). At the outset, the burden is on the moving party to demonstrate that the evidence of record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). A dispute is genuine if the evidence is such that a reasonable jury could return a favorable verdict for the non-movant. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). To determine whether a dispute is genuine, the court is not to weigh the evidence or determine the truth of the matter, but must only determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249. The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment. *Horta v. Sullivan,* 4 F.2d 2 (1st Cir. 1993) (citing Wright And Miller, Federal Practice § 2721); *Pollack v. City of Newark,* 147 F. Supp. 35, 39 (D.N.J. 1956), *aff'd,* 248 F.2d 543 (3d Cir. 1957), *cert. denied,* 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

The party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322-23. Once the moving party's burden is satisfied the burden shifts to the nonmoving party who must go beyond its pleadings and designate specific facts through affidavits, depositions, admissions, or answers to interrogatories, in order to demonstrate that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## III.     ANALYSIS

Travelers contends that Plaintiff's claims for breach fail because: (1) the damage to the roof decking, which has rendered the building valueless, was caused by long-term rust and decay, not damage from the snowstorm; and (2) Plaintiff cannot recover the Building's replacement cost because the Policy limits its recovery to only those damages that were suffered as a direct result of the storm, which includes only the roof decking. As to the latter argument, Travelers insists that replacing the Building would enable Plaintiff to recover consequential damages, which "are not recoverable in the absence of a claim for bad faith against an insurer." (Docket No 34, at 5). It is undisputed that Plaintiff has not advanced a bad faith claim.[5] (Docket No. 39, at 4); *see* (Docket No. 1). The Court addresses each of these arguments, in turn.

**A. There is a Genuine Issue of Material Fact Regarding the Cause of the Damage to the Roof Decking.**

It is Plaintiff's position that all damages for which it is seeking recovery resulted from the February 2010 snowstorm. (Docket No. 37, at 1, 3). To that end, Plaintiff has produced the report and deposition transcript of an expert, architect Ryan M. Pierce,[6] who will testify that the damage to the roof decking was caused by the heavy volume of snow that fell during that storm.

---

[5] Travelers refers to case law suggesting that consequential damages are not recoverable for breach of an insurance contract in absence of bad faith. *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, Civ. No. 05-281, 2011 WL 611802 (E.D. Pa. Feb. 17, 2011). To prove a claim for bad faith under Pennsylvania law, a plaintiff must demonstrate by clear and convincing evidence that the insurer did not have a reasonable basis to deny benefits under the policy, and the insurer knew of, or recklessly disregarded, its lack of a reasonable basis to deny the claim. *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. 1994); *see also* 42 Pa.C.S.A. § 8371. Pennsylvania courts define bad faith by an insurer as any frivolous or unfounded refusal to pay the proceeds of a policy. *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 904 (Pa. 1999); *Romano v. Nationalwide Mut. Fire Ins*. Co., 646 A.2d 1228, 1232 (Pa. 1994) (quoting Black's Law Dictionary 139 (6th ed. 1990).

[6] Mr. Pierce is currently employed as an architect and principal at his own architectural and construction management firm, J.C. Pierce, LLC. (Docket No. 36-1, at 6). He holds a four-year Bachelor of Science degree in architecture and a fifth year professional Bachelor of Architecture degree from Penn State University, received in 1988. (*Id.* at 6-7). Mr. Pierce has completed continuing education classes at the University of Wisconsin, Penn State, and Harvard University. (*Id.*). He has also taken additional courses in structural engineering and mechanical engineering. (*Id.* at 9).

(Docket No. 27, at 2; Docket No. 35, at ¶ 14; Docket No. 35-6, at 20-22; Docket No. 37, at 2). On the other hand, Travelers relies on forensic engineer, Scott M. Wasson,[7] who supports Travelers' position that the damage to the roof decking was not caused by the snow, but rather by longstanding rust damage and decay. (Docket No. 35, at ¶ 14; Docket No. 35-6, at 3-6). Although Travelers had previously challenged Mr. Pierce's ability to testify as an expert, (Docket No. 31), the Court has found that his testimony met the admissibility requirements of Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals*. (Docket No. 43). The Court will not revisit that ruling.

In this Court's estimation, the cause of the damage to the roof decking goes to the core of Plaintiff's breach of contract claim and request for damages in the amount of the replacement cost of the building. Because the parties have provided opposing evidence from expert witnesses regarding the key factual issue in dispute, the Court declines to grant Defendant's motion for summary judgment on the breach of contract claim. FED. R. CIV. P. 56(a); *see Torno v. 2SI, LLC.*, Civ. No. 03-74091, 2006 WL 1284924 at *2 (E.D. Mich. May 10, 2006) (holding there were genuine issues of fact based on the parties' competing expert testimony).

---

[7] Mr. Wasson is a Senior Forensic Engineer with Donan Engineering Company, Inc. (Docket No. 32-2 at 3, 6). Neither party has submitted further information regarding Mr. Wasson's education or background. The Court, however, takes judicial notice of the following record from the Pennsylvania Department of State: Mr. Wasson is a professional engineer, licensed to practice in Pennsylvania. *See* PENN. DEPT. OF STATE LICENSE CHECK available at http://www.licensepa.state.pa.us/Search.aspx; s*ee Kos Pharma., Inc. v. Andrx Corp.,* 369 F.3d 700, 705 n. 5 (3d Cir. 2004) (holding that documents found on an agency's website were noticeable as "public records"). According to the Court's further research, prior to joining Donan Engineering, Mr. Wasson worked for Atlantic Engineering Services, Monroe & Newell Engineers Inc., and CBM Engineers Inc. *See* http://www.linkedin.com/pub/scott-wasson/2b/97/7a0. He received his Bachelors of Science in Civil Engineering from Penn State University in 1993. *Id.*

**B. Consequential Damages Are Not Implicated**

It is hornbook law that the remedy for a breach of contract is the compensatory damages that put the non-breaching party in the position he would have been in had the breaching party performed on the contract. *See* Joseph M. Perillo, *Calamari and Perillo on Contracts* § 14.5 (6th ed. 2009); UCC § 1-106; revision § 1-305; Corbin § 55.3. Pennsylvania law recognizes two types of contract damages: (1) general damages, which are those that flow directly from the breach (also referred to as ordinary or compensatory damages); and (2) special (or consequential) contract damages, which occur as a result collateral losses such as expenses incurred or gains prevented because of the breach. *Baynes v. George E. Mason Funeral Home, Inc.*, Civ. No. 3-153, 2011 WL 2181469 (W.D. Pa. June 2, 2011) (citing *LBL Skysystems (USA), Inc. v. APG–America, Inc.*, 319 F. Supp. 2d 515, 523 (E.D. Pa. 2004) (citations omitted)); *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 624 (E.D. Pa. 1998). General damages are those that flow from the usual and ordinary circumstances following the breach. *Fort Washington Res., Inc. v. Tannen*, 901 F. Supp. 932, 943 (E.D. Pa. 1995); *Parsons Trading Co. v.* Dohan, 167 A. 310 (1933). In contrast, special or consequential damages are those that are not usual and ordinary consequences of the breach. *McDermott*, 11 F. Supp. 2d at 624. Rather, they depend on special circumstances. *Tannen*, 901 F. Supp. at 943.

Normally, a breaching party is liable only for the general damages that would naturally result from the breach. *See* RESTATEMENT (SECOND) OF CONTRACTS § 351(2)(a) ("Loss may be foreseeable as a probable result of a breach because it follows from the breach in the ordinary course of events."); *McDermott*, 11 F. Supp. 2d at 624. However, the breaching party may also be liable for consequential damages if "it is shown specifically that the defendant had reason to

know of the circumstances responsible for the special damage and [the ability] to foresee the injury." *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854); *McDermott*, 11 F. Supp. 2d at 624 (foreseeability of consequential or "special" damages is determined based on the parties' understanding at the time of contract). Thus, to recover consequential damages, a plaintiff must show that at the time the contract was entered, "the damages subsequently claimed were in the reasonable contemplation of the parties." *Keystone Diesel Engine Co. v. Irwin*, 191 A.2d 376, 378 (Pa. 1963).

The seminal English case of *Hadley v. Baxendale* provides the classic example of consequential damages in the context of a commercial contract dispute. 9 Ex. 341, 156 Eng.Rep. 145. There, the court held that lost profits and the closure of a mill caused by the carrier's failure to deliver a necessary piece of equipment to the mill on time could not be recovered as special or consequential damages because such contingencies were not reasonably foreseeable to the parties at the time of contract. *Id.*; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 351(1) ("Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made."). A mill shutting down due to a missing piece of equipment is certainly not a result which <u>necessarily</u> follows from delayed delivery of a piece of equipment; however, it is a <u>foreseeable</u> outcome given the necessity of same. *See* Perillo, *supra*, at § 14.5. Extrapolating the reasoning of *Hadley* to the circumstances presented here, a claim for consequential damages in this case would be presented if Plaintiff sought to recover millions of dollars in lost profits from Travelers due to the Building being rendered unusable for business. *See, e.g., Autoforge, Inc. v. Am. Axle & Mfg., Inc.*, 2008 WL

65603 at *1 (W.D. Pa Jan. 4, 2008) (referring to lost profits as consequential or incidental damages).

On the other hand, direct damages are those that arise within the natural scope of the breach. *See McDermott*, 11 F. Supp. 2d at 624. As the Court has already mentioned, the Policy covers "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by *or resulting from* a Covered Cause of Loss." (Docket No. 35-3, at 22) (emphasis added).[8] By the terms of the Policy, a property collapse resulting from the "weight of snow, ice or sleet" is explicitly covered. (Docket No. 35-4, at 14, 16). Here, Plaintiff's theory is that the February 2010 snowstorm damaged both the roof and the roof decking, and the Building itself would continue to sustain progressive damage from the elements unless both were repaired. (Docket No. 36, at 1-2). Because Travelers refused to cover the roof decking repair costs on the grounds that it was not covered by the Policy, the roof decking went unrepaired, according to Plaintiff, (Docket No. 35-2, at 17-18; Docket No. 39, at 11), as no contractor would repair the roof unless and until the roof decking was repaired. (Docket No. 39, at 10-11). As a consequence, the building continued to deteriorate and ultimately became unusable. (*Id.*). In light of these facts in the record, Plaintiff is not seeking to recover "consequential damages" as defined by Travelers, but rather only those "general" and direct damages arising out of Plaintiff's claim based on breach of contract.[9]

---

[8] Also informative on this point, the Policy contains a Loss Payment clause that provides in pertinent part: "In the event of loss or damage covered by this Coverage Form, at our option, we will either (1) Pay the value of lost or damaged property; (2) Pay the cost of *repairing or replacing* the lost or damaged property…" (Docket No. 35-3, at 32) (emphasis added).

[9] In the insurance contract setting, damages beyond direct damages are only available in limited circumstances, typically when bad faith is involved. *See Henderson v. Nationwide Mut. Ins. Co.*, 169 F. Supp. 2d 365, 368 (E.D. Pa. 2001) ("If Plaintiff proves [bad faith], he may be entitled to compensatory and/or consequential damages."). *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, Civ. No. 05-281, 2011 WL 611802, at

As with other insurance coverage claims, if the damages claimed by Plaintiff for the roof decking were caused by a Covered Loss, recovery of that loss would be compensatory and not consequential in nature. *See Polito v. Continental Cas. Co.*, 689 F.2d 457, 461 (3d Cir. 1982) (in a suit for money due under an insurance contract, recovery typically comprises the debt plus interest); *see also Ambrose v. State Farm Fire & Cas. Co.*, Civ. No. 90-5642, 1991 WL 238132, at *1 (E.D. Pa. Nov. 7, 1991) ("it is well settled that disputes over payment of insurance claims are claims for breach of a contract to pay money"); *Erwin v. World Mut. Health & Accident Ins. Co.*, 186 A. 260, 261 (Pa. 1936) ("if the insurance company refused, in violation of its contract, to accept the premiums, the insured may elect either to sue on the contract to recover damages for the breach or rescind the contract and sue in assumpsit to recover back money paid under the contract, for which she received no substantial benefit"). Because the record supports Plaintiff's theory that Travelers breached the Policy by failing to pay for repairs to the roof decking, the money damages claimed by Plaintiff are arguably related to said breach.[10] *See Fort Washington*, 901 F. Supp. at 932; *Parsons Trading*, 167 A. at 310.

To some extent, Travelers seems to argue that because the claim for the roof decking repair was not made initially in February 2010, that such damages must be consequential or outside the contemplation of the Policy. (Docket No. 34, at 5-10). This dispute is purely semantic—the fact that damage to the Building was a "consequence" of the lack of repair does

---

*27 (E.D. Pa. Feb. 17, 2011) (collecting authorities for the proposition that "consequential damages for breach of an insurance contract are only available where there has been evidence of bad faith on the part of the insurer"); *Closterman v. Liberty Mut. Ins. Co.*, Civ. No. 93-4458, 1994 WL 591758, at *1 (E.D. Pa. Oct. 28, 1994) (holding that under Pennsylvania law, consequential damages are not normally recoverable for breach of contract) (collecting cases); 2 Insurance Claims and Disputes § 9:26 (6th ed.). However, the Complaint as pled does not allege bad faith. (Docket No. 1-2).

[10] The Court notes that the building damage, however, may not be Covered Losses if Travelers can convince a jury that rust caused the roof collapse.

not mean that the damages Plaintiff seeks are "consequential damages" as a matter of law. Plaintiff's request for additional funds after making an initial claim is not fatal to its cause of action. The Policy requires only that the physical loss or damage be caused by or resulting from a Covered Cause of Loss. (Docket No. 35-3, at 22). Claims for damage or loss are valid as long as they are brought within two years under the policy.[11] (Docket No. 35-3, at 20); *see also Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 59 (3d Cir. 1982) (the insured can be indemnified for acts or occurrences taking place within the policy period).

Travelers also maintains that Plaintiff is asserting excessive Building damage. (Docket No. 34, at 5-10). As Plaintiff has repeatedly stated, however, all the damages that it seeks were directly caused by the snowstorm and should be covered by the terms of the Policy. (Docket No. 37, at 1; Docket No. 44). In this Court's estimation, Travelers' failure to pay the costs to repair the roof decking at a time that may have prevented future damage does not change the fact that the initial damage may have been caused by the snowstorm.[12] Accordingly, this dispute is one properly resolved by trial and not by motions practice.

---

[11] Indeed, the approximately $45,000 in repair costs Travelers had already approved consisted of three payments that were apparently made as necessary repairs were promptly being identified by Plaintiff. (Docket No. 39, at 9-10; Docket No. 42, at ¶¶ 3-4. These payments were based on based on estimates dated March 22, 2010, March 29, 2010, and July 23, 2010. (Docket No. 42, at ¶ 4; Docket Nos. 42-1; 42-2; 42-3). Given these payments, however, it would appear Travelers may be allowed to set off these costs from the ultimate damages award, if any. *See Feeley v. United States*, 337 F.2d 924, 936 (3d Cir. 1964) (value of benefits given to plaintiff must be deducted from the ultimate damages award).

[12] On a related note, the Court emphasizes that Plaintiff also had a duty to make reasonable attempts to mitigate damages. *Bafile v. Borough of Muncy*, 588 A.2d 462, 464 (Pa. 1991) (collecting cases). However, the burden is on the party who breaches the contract to show how further loss could have been avoided through the reasonable efforts of the injured party. *Ecksel v. Orleans Constr. Co.*, 519 A.2d 1021, 1028 (Pa. 1987). Moreover, an injured party is not obligated to mitigate damages when both he and the liable party had an equal opportunity to do so. *Id.* As Travelers has failed to show how Plaintiff's loss could have been avoided through reasonable efforts to mitigate or whether it could not have mitigated damage to the Building by making a payment on the claim, the Court declines to rule on this defense at this time.

## IV. CONCLUSION

As there is a genuine issue of material fact between the parties as to the cause of the damage to the roof decking, Travelers' motion for summary judgment on Plaintiff's breach of contract claim is denied. Given the cause of the damage to the roof decking implicates Travelers' argument that Plaintiff is improperly seeking consequential rather than compensatory damages, the Court also denies Travelers' motion for summary judgment on Plaintiff's claim to recover the total value of the building. In sum, Travelers' Motion [33] is denied and this case shall be set down for trial.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: September 4, 2013
cc/ecf: All counsel of record